UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | CV 14-4052-GAF<br>CV 14-4174-GAF<br>CR 09-292-GAF* | | Date | October 28, 2014 |
|---|---|---|---|---|

Present: The Honorable **GARY ALLEN FEESS**

Interpreter  None

| Renee Fisher | None | Jayne Kim |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Derris Hurth | | √ | | Pro Se | | | |

Proceedings:  **IN CHAMBERS**

## ORDER RE: PETITION UNDER 28 U.S.C. 2255

### I.
### INTRODUCTION

On December 4, 2009, Derris Hurth ("Hurth" or "petitioner"), one of five defendants charged with conspiring to rob a drug stash house, was convicted of: (1) conspiracy to possess with intent to distribute cocaine; (2) conspiracy to interfere with commerce by robbery; and (3) a derivative charge under 18 U.S.C. § 924(c) alleging the use of a firearm during and in relation to a drug trafficking crime. The jury also found that the drug conspiracy involved at least five kilograms of cocaine. On June 13, 2011, after the presentation and resolution of Hurth's pre-trial motions and his request for reconsideration of the Court's rulings, the Court sentenced Hurth to 180 months in custody.

Hurth appealed his conviction to the Ninth Circuit Court of Appeals. His conviction was affirmed in all respects. Now Hurth moves to set aside his conviction pursuant to 28 U.S.C. § 2255.[1] In this petition he contends that he was deprived of effective assistance of counsel both

---

[1] Hurth has raised these issues in two virtually identical petitions: one filed in CV 14-4053-GAF, and a second in 14-4174-GAF. The Court addresses both of them in this order and refers to them jointly as "the petition."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

at trial and on his appeal, that the jury instructions were inadequate, and that he was the victim of prosecutorial misconduct. For the reasons discussed below, the petition is meritless and is denied and dismissed with prejudice.

## II.
## BACKGROUND

### A. THE INVESTIGATION

#### *1. The Initiation of the Investigation*

In late February 2009, agents of the Bureau of Alcohol, Tobacco and Firearms ("ATF") were advised that a suspected drug dealer (Adrian Evans) with whom they had contact was experienced in committing robberies and could put together a crew to rob stash houses. Based on that information, ATF Special Agent ("SA") Darrin Whitmore, acting in an undercover capacity and using the moniker "Fly D," was introduced to Evans. An informant introduced Evans as someone who knew and could provide a home invasion robbery crew. SA Whitmore claimed to be an accomplice in a drug trafficking organization, claimed to have information about a stash house, and explained to Evans, and later to others, that in the near future there would be 10 to 15 kilograms of cocaine at the stash house plus some cash, and that there would be three people in the house with the cocaine. Based on that information, SA Whitmore and Evans concocted a plan to conduct a home invasion robbery of the drug stash house. In brief, Evans was to gather a robbery crew that would enter the stash house where SA Whitmore, supposedly a member of a group of drug dealers, would be present. SA Whitmore was to be tied up by the robbery crew, along with his other drug accomplices, to conceal the fact that SA Whitmore had helped to plan the robbery. Later, after he freed himself from his bonds, SA Whitmore would meet up with the robbery crew and take his share of the robbery proceeds.

#### *2. Evans Introduces Whitmore to the Crew Leader*

Evans self-proclaimed prowess at putting together a robbery crew proved to be problematic. The first robbery team proved unable to carry out the job. However, rather than walk away from the prospect of obtaining large amounts of money and drugs, Evans came up with a second group headed by defendant Shane Mullins. On March 10, 2009, Evans spoke with SA Whitmore and arranged a meeting with the new crew later that afternoon.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# CRIMINAL MINUTES - GENERAL

At around 6:30, SA Whitmore arrived met with Evans and Mullins at a car wash in South Central Los Angeles. After a lengthy conversation regarding the details of the contemplated robbery, they arranged to meet the other members of the robbery crew who were unable to attend the initial meet because they were "already heated" (carrying firearms). Mullins explained that "we got the homeboy, they already got their gear." Mullins explained that he had his two boys "around the corner" but that he didn't want them coming to the car wash with the guns. They then left the car wash for a meet at 104 Street and Baring Cross.

At that location, SA Whitmore first met Hurth who drove up in a GMC SUV with Mullins in the passenger seat. SA Whitmore spoke briefly with Evans, Mullins and Hurth about meeting at a warehouse location before going on to the stash house. The three vehicles left the area with SA Whitmore and Evans in the lead car. Hurth and Mullins drove together in the GMC. SA Whitmore, still uncomfortable over the change in the crew, told Evans that he wanted to talk to everyone when they picked up the rental car because "I just want to make sure everybody's on the same page . . . ." They also discussed the crew and Evans said that they were all from Hoovers, that they know each other, and that the "big homies" (Mullins and Hurth) who are in the truck together are the ones "that you talk to." Whitmore directed them to a location where the ATF had officers in position to make the arrest.

### 3. The Arrest

When they arrived at the arrest location, Hurth pulled up next to Whitmore's rental SUV. SA Whitmore pulled in behind them and walked to the GMC driven by Hurth. SA Whitmore and Hurth spoke at the driver's side window of the GMC. Hurth first expressed concern about cameras on the corner of the building, asking "What's up with the camera right there. That little ball – on the corner right here, to your left . . ." Hurth then said to SA Whitmore, "Hey, come here bro. Come talk to me." Hurth asked SA Whitmore "what's the deal man?" SA Whitmore started to explain that "I got shit coming in from Mexico" at which point Hurth interrupted and said, "Brother, you done already told us the deal. We just here to get down shit. Point the way." Hurth further said that they were "getting young homies to hop in there."

After some further discussion, SA Whitmore said to Hurth, "but you all – you all – you all don't want to do it, just let me know." At which point Hurth began to become agitated and asked, "what do you mean, don't want to." SA Whitmore replied by expressing his concern over getting his cut, stating "I just want mine, that's all I'm saying." Hurth told him that "we don't play ball like that. You're going to get all yours. If he eat all of us." Moments later Hurth again said, "come on man, just hop in the car and let's do this." Although SA Whitmore had planned to discuss the details of the plan in more detail, precisely because he was not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

persuaded that all members of the purported robbery crew knew and understood it, Hurth's impatience worried SA Whitmore and he gave the arrest signal. SA Harris ran and tossed a weapon as he sought to flee the scene.

### B. THE CONVICTIONS

Evans pled guilty to one count of the indictment. The other four defendants proceeded to trial. As noted above, all four were convicted on the three counts. Hurth moved for acquittal under Rule 29 or in the alternative for a new trial under Rule 33. Those motions were denied. Hurth then appealed to the Ninth Circuit. His convictions and sentence were affirmed. He now brings this collateral attack on his convictions.

## III.
## DISCUSSION

### A. SECTION 2255

28 U.S.C. §2255 permits "[a] prisoner in custody under sentence of a court established by Act of Congress...imposed in violation of the Constitution or laws of the United States...[to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. §2255. To succeed on a Section 2255 petition, the petitioner must do more than state broad legal conclusions without supporting factual allegations, even in the pro se context. E.g., Sanders v. United States, 373 U.S. 1, 19 (1963); Wacht v. Cardwell, 604 F.2d 1245, 1247 (9th Cir. 1979).

Likewise, Section 2255 does not substitute for appeal (United States v. Frady, 456 U.S. 152, 165 (1982)) and provides no basis for non-constitutional and non-jurisdictional claims that do not result from fundamental defects that result in a miscarriage of justice. United States v. Addonizio, 442 U.S. 178, 186-87 (1979). Claims that were subject to direct review are procedurally defaulted and may not be presented in a Section 2255 proceeding without a showing of cause and prejudice, or a showing of actual innocence. Bousley v. United States, 523 U.S. 614, 622 (1998). Cause means something external to the petitioner that prevented him from raising the issue on appeal (Coleman v. Thompson, 111 S.Ct. 2546, 2566 (1991), and prejudice means that the error was so significant that it infected the entire trial with error of constitutional dimension. Frady, 456 U.S., at 170. Because claims of ineffective assistance

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

cannot ordinarily be decided on the trial record, they are commonly raised on a Section 2255 motion.

### B. THE ISSUES

In the present petition, Hurth raises the following issues:

(1) Prosecutorial misconduct for presenting perjured testimony of Agent Patrick Webb regarding the testing of firearms located at the scene of the arrest.

(2) Ineffective assistance of trial counsel due to a conflict of interest leading to his failure to take certain actions at trial.  This issue was raised in post-trial motions, rejected by the trial court, and was not included as an issue on appeal to the Ninth Circuit.

(3) Ineffective assistance of trial counsel for failing to obtain jury instructions on entrapment and sentencing entrapment.  Hurth also suggests that the Court erred in failing to give these instructions sua sponte.

(4) Ineffective assistance of appellate counsel for failing to raise issues regarding the accuracy and use of transcripts of recorded conversations involving defendant and his accomplices, and for failing to properly appeal the denial of Hurth's motion for outrageous government misconduct.

None of these issues warrants the relief sought.  The government's lengthy opposition to the pending petitions sets forth in great detail the reasons for denying the requested relief.  The Court briefly addresses the issues below.

### C. PROSECUTORIAL MISCONDUCT

Petitioner contends that the prosecutors engaged in misconduct by presenting the fabricated testimony of Special Agent Patrick Webb.  Webb testified at trial that he recovered firearms from the scene of the arrest and confirmed that they were designed to fire bullets.  To this testimony there was no objection.  Likewise, the testimony was not the subject of a pre-trial motion, a post-trial motion, or raised as an issue on appeal.  Apparently, Hurth is now arguing that the weapons that were seized are not firearms – a proposition for which he offers no evidence – and that the prosecution presented false testimony to prove that they were.  Having

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

never raised the claim at any level, it is procedurally defaulted.

To avoid the procedural default issue, Hurth then argues that the failure to raise the issue constitutes ineffective assistance of counsel. However, because there is no evidence to support the claim, and indeed, the available evidence is entirely contrary to Hurth's contention, his ineffective assistance argument is not worthy of further consideration.

**D. INEFFECTIVE ASSISTANCE OF COUNSEL**

Hurth complains that both his trial counsel and appellate counsel were ineffective. To succeed on an ineffective assistance claim, Hurth must show that his counsel's performance in fact fell below an objective standard of reasonableness and that he suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668, 687-89 (1984). The first prong – the deficient performance prong – contemplates a wide range of professional competent assistance and must be assessed in light of what counsel reasonably knew at the time and not from the perspective of 20-20 hindsight. Babbitt v. Calderon, 151 F.3d 1170, 1173-74 (9th Cir. 1998); United States v. Oplinger, 150 F.3d 1061, 1071-72 (9th Cir. 1998). Courts should generally recognize that counsel "is strongly presumed to have rendered adequate assistance and made all significant decision in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. Reasonable tactical decisions, regardless of outcome, do not constitute a failure to meet the adequate performance prong. Hensley v. Crist, 67 F.3d 181, 185 (9th Cir. 1995).

With respect to prejudice, the petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Thus, if the alleged deficient performance consisted of the failure to bring a motion that would have failed, petitioner cannot claim to have suffered prejudice. E.g., Baumann v. United States, 692 F.2d 565, 572 (9th Cir. 1982).

*1. Trial Counsel's Alleged Ineffective Assistance – "Romantic Interest"*

Here petitioner argued that his trial counsel suffered from a conflict of interest. Counsel allegedly had a romantic interest in Hurth's niece and this somehow established a conflict of interest. Because of that conflict, counsel failed to raise certain issues at trial that Hurth contends would have shown he was innocent of the charges. To succeed on an ineffective assistance claim based on a conflict, petitioner must show that counsel represented interests that were in fact in conflict and that the representation affected counsel's performance of his duties to petitioner. Mickens v. Taylor, 535 U.S. 162, 170-71 (2002). Mickens made clear that a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

theoretical division of loyalties was insufficient to show an actual conflict, and that prejudice is not presumed unless a conflict of interest "that affected counsel's performance" has been shown. Id. at 171 citing Cuyler v. Sullivan, 446 U.S. 335, 349 (1980). In Sullivan, the court found that joint representation was enough to create a presumption of a conflict of interest, but the Sullivan presumption has not been extended to any other context. Thus, Mickens states the operative rule: in any other context prejudice is not shown unless evidence is presented establishing the existence of an actual conflict.

Here the claim has been procedurally defaulted. Petitioner raised the conflict of interest issue with the trial court in a post-trial Rule 33 motion. In a detailed written order, the court rejected the claim and found that counsel's performance was not deficient. (Docket No. 294.) Hurth sought reconsideration of the Court's denial; the Court denied the motion for reconsideration. (Docket No. 346.) Hurth did not appeal the Court's denial of that motion, and failed to raise the issue of ineffective assistance in his appeal to the circuit. Accordingly, he had procedurally defaulted on this issue.

But even if the Court were to consider the arguments once more, the result would not be different. Counsel's alleged romantic interest in Hurth's niece, an interest that has never been proven, would not constitute a conflict of interest that would impair his ability to effectively represent Hurth. That is most vividly demonstrated by Hurth's inability to connect up the purported conflict with the errors he asserts: (1) the alleged failure to assert a "wrong place at the wrong time" defense; (2) the alleged failure to object to demonstrative transcripts used at trial; and (3) the alleged failure to establish that Hurth never got out of the car on the date of his arrest. How these relate to counsel's imagined romantic interest in his niece is not explained and cannot be explained because the assertions are factually incorrect.

First, Hurth's counsel did advance the wrong place/wrong time argument starting in his opening statement and continuing through cross-examination of witnesses, and closing argument. Second, the issue of the accuracy and use of the transcripts was raised prior to trial and before the tapes were played during trial. The Court reviewed the transcripts for accuracy and instructed the jury regarding the purpose of the transcripts before any recordings were played. Finally, that Hurth never left his vehicle was not a matter in dispute. SA Whitmore never testified otherwise and government counsel never argued that Hurth left his vehicle. Accordingly, Hurth's argument has no bearing on the adequacy of his counsel's performance.

In short, because Hurth's arguments are factually erroneous, they cannot serve as a basis for showing that counsel's performance was inadequate. It follows that Hurth could not have suffered prejudice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# CRIMINAL MINUTES - GENERAL

*2. Trial Counsel's Failure to Seek an Entrapment Instruction*

Petitioner contends that trial counsel was ineffective because he failed to seek an instruction on the entrapment defense and sentencing entrapment, and that the Court erred in not giving such instructions.

a. Substantive Entrapment

The claim is meritless. In this case, Hurth involved himself in what he believed to be a robbery conspiracy before having ever met a government agent or informant. Hurth, along with Mullins, Harris and Nelson were brought into this scheme by Evans who recruited them. Even though Evans had dealt with a government agent, case law plainly holds that Evans' recruitment of accomplices does not constitute entrapment. United States v. Thickstun, 100 F.3d 1394, 1398 (9th Cir. 1997). Accordingly, the entrapment defense "does not apply when one criminal simply convinces another to join him in a criminal enterprise." Id. at 1398-99. Thus, the only defendant in this case who could claim entrapment was Evans because only Evans could claim to be induced to participate in the crime by SA Whitmore. Hurth and his team were solicited by Evans and cannot claim entrapment. As the government notes, when Hurth finally spoke with SA Whitmore, he indicated that he already knew what the deal was and was eager to get on with it.

In short, the lack of any evidence of inducement by the government shows that Hurth's claim that he was improperly denied entrapment instructions are frivolous, which undermines both his ineffective assistance of counsel argument and any claim that the Court erred in failing sua sponte to give such an instruction.[2]

---

[2] The Court also notes that recordings of Hurth's conversations with SA Whitmore reflected that Hurth was ready, willing and able to participate in the robbery scheme – in short, that he was strongly predisposed to engage in criminal conduct. His predisposition is further reflected in his criminal record, which includes firearm and drug offenses. Experienced counsel could reasonably concluded that attempting to present an entrapment defense would lead to the exposure of evidence and information that would do substantial harm to the effort to portray Hurth as merely being at the wrong place at the wrong time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

### b. Sentencing Entrapment

Hurth insists that he was entitled to a sentencing entrapment instruction, that his counsel should have requested it, and even though he failed to do so, the Court should have given it sua sponte. He relies heavily on United States v. Cortes, 732 F.3d 1078 (9th Cir. 2013) ("Cortes I") and United States v. Cortes, 757 F.3d 859 (9th Cir. 2014) ("Cortes II"). His contention that his attorney was ineffective for not requesting a sentencing entrapment instruction fails for two reasons.

First, Cortes I was decided almost three and a half years after Hurth's trial; Cortes II, which holds that sentencing entrapment is a jury question was decided more than four years after trial. Cortes II acknowledges that it states a new application of Apprendi. 757 F.3d at 861 ("We have never held that sentencing entrapment is a jury question . . . .") Case law holds that counsel's performance must be judged by the state of the law as of the time of his conduct and does not require counsel to predict changes in the law. Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). Thus, the failure to request a sentencing entrapment instruction does not render counsel's performance ineffective.

Second, the Cortes cases are factually distinct from the present case. In Cortes, the defendant had extensive dealings with a government agent and acted as the intermediary between the agent and a robbery crew, much like Evans did in this case. He also took the stand and testified to the inducements he received from the agent and his motivations for participating in the scheme. Hurth did none of that. Moreover, the Cortes II court indicated that, to obtain a sentencing entrapment instruction, Hurth would have had to present evidence that he did not have the intent to steal the quantity of drugs discussed, that he did not have the capability of stealing the quantity of drugs discussed, and that the quantity was inflated to increase his punishment. (Id. at 864-65.) The evidence here would not have supported the instruction. Hurth evidenced both the intent and the capacity to carry out the scheme to commit the robbery of at least five kilograms of cocaine. As the government notes, Hurth was eager to move forward with the robbery and was frustrated over the delay. Moreover, there is nothing in the record that would show that the drug quantity was mentioned to enhance anyone's sentence. Rather, SA Whitmore explained that the quantity he mentioned was a better fit with the notion that he was working with substantial drug traffickers.

In short, nothing in the record would have supported a sentencing entrapment instruction if one had been requested. Thus, counsel was not ineffective for failing to request it and the Court did not err in failing to give it sua sponte.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

### 3. *Appellate Counsel*

#### a. The Transcripts

As noted above, there was no error at the trial court level involving the accuracy or use of the transcripts of recorded conversations. For that obvious reason, appellate counsel did not raise any issue regarding the accuracy of the transcripts of recorded conversations involving defendants including Hurth. The jury was provided transcripts as a listening aid, but was instructed that the evidence consisted of the audio recordings and that if there were any variance between the audio and the transcript, the audio controlled. Trial counsel had no basis for objecting to the transcripts, which the Court reviewed for accuracy before they were used at trial. Issues regarding these transcripts were raised again in post-trial motions as a basis for attacking the adequacy of trial counsel's performance, and were again denied by the Court. The issues of the transcripts' accuracy and their use at trial is simply not one worth extended discussion. Trial counsel was not ineffective for not succeeding in having them excluded and appellate counsel had no basis for presenting any issue on appeal regarding their accuracy, their use, or trial counsel's challenge to them.

#### b. The Standard for Assessing Outrageous Government Conduct

This issue merits little discussion. Hurth moved for dismissal of the charges against him on the basis of outrageous government conduct in connection with the reverse sting operation. At the trial level that motion was considered and denied. The issue was raised and rejected on direct appeal. The government notes that appellate counsel cited and argued the relevant legal authorities and the correct legal standard. (See Appellant's Opening Brief, 2012 WL 1134189 at *25-30.) The issue was rejected by the circuit in a memorandum decision that also identified and applied the correct legal standard. United States v. Hurth, 507 Fed. Appx. 731, 732 (9th Cir. 2013.) There is, therefore, no basis for a claim that appellate counsel rendered ineffective assistance.

## E. HEARING AND CERTIFICATE OF APPEALABILITY

Based on the foregoing, the Court concludes that the files and records of this case conclusively show that petitioner is entitled to no relief. Accordingly, the Court will not conduct a hearing on the issues presented in the petitions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

Furthermore, the Court has considered whether petitioner is entitled to a certificate of appealability under 28 U.S.C. § 2253(c)(2).  Under that section, a certificate "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  Here many of petitioner's issues have already been considered and rejected by the Ninth Circuit or could have been but were not previously raised.  Moreover, the main thrust of the petitions – ineffective assistance of counsel at both the trial and appellate level – are so devoid of either factual or legal support that they do not come close to raising a genuine claim of a constitutional deprivation.  The Court therefore declines to issue a certificate of appealability.

## IV.
## CONCLUSION

For the foregoing reasons, the petitions under 28 U.S.C. § 2255 are **DENIED** and the petitions are ordered **DISMISSED WITH PREJUDICE** in both CV 14-4052-GAF and CV 14-4174-GAF.

**IT IS SO ORDERED.**